IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No. |
| | ) |
| DENIS McDONOUGH, Secretary | ) |
| UNITED STATES DEPARTMENT OF | ) |
| VETERANS AFFAIRS, | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Michael Hill, by and through his undersigned counsel, and files this Complaint for damages for his causes of action against Defendant the United States Department of Veterans Affairs. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Plaintiff was employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 139, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

4. Plaintiff, Michael Hill, is a United States citizen. He resides in the greater Kansas City area.

5. Plaintiff is an African American male who has participated in protected activity.

6. Defendant McDonough, in his capacity as Secretary of the VA, is located in Washington, D.C.

7. The United States of America and its Agency, United States Department of Veterans Affairs, Kansas City Veterans Administration Hospital (hereafter "KCVA") is located at 4801 Linwood Blvd., Kansas City, Missouri.

## ADMINISTRATIVE PROCEDURES

8. After initiating informal administrative complaints on December 11, 2018 and May 27, 2019, June 6, 2019, and July 10, 2019, Plaintiff received his Notices of Right to File Formal Complaints and timely filed them. The administrative Complaints of Discrimination were assigned Case Nos. 200J-0589-2019101067 and 200J-0589-2019104686.

9. Plaintiff initially requested a hearing in front of an Administrative Law Judge. He withdrew that request and Final Agency Decisions were issued on April 5, 2021 and April 7, 2021.

10. Plaintiff's administrative Complaints of Discrimination alleged that he was discriminated against on the basis of disability, race, sex, age and because of prior protected activity.

11. Plaintiff has exhausted all administrative remedies.

12. Plaintiff timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

13. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of his administrative Complaints of Discrimination and they

reasonably followed from and were closely related to the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation.

14. Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokes his right to bring this civil action in that he has satisfied all administrative and judicial prerequisites to the institution of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

15. Plaintiff is an African American male.

16. At the relevant times, Plaintiff was employed as an Accounting Technician GS6 at the KCVA. He has two Master's degrees in accounting and his licensure as a Certified Public Accountant. He worked at the KCVA for nine years until he was given a failing performance review and constructively discharged in July 2019.

17. Mr. Hill also served as a Union Steward at the KCVA and became involved in multiple complaints of racial discrimination and harassment on behalf of other colleagues.

18. During his time working for the Kansas City Veteran's Administration, colleagues, coworkers, and supervisory personnel repeatedly referred to him as "boy." Boy is a demeaning term to a black man, especially a professional.

19. Mr. Hill was called "boy" so often, it became like his name. When he complained, the employees and supervisors with whom he worked started pretending to catch themselves and say things like "Oh, I guess I better not say that."

20. Boy is offensive because it is a euphemism of a slave name.

21. On another occasion, a white co-worker yelled across the open office with others listening and called Plaintiff a crack head. Then retracted it, saying Plaintiff was not on crack, he was on his period.

22. This same co-worker was allowed to telework while Mr. Hill was prevented from doing so. While she was teleworking, her certificates were left on the wall. A white supervisor, while perusing the teleworking co-worker's certificate, said that Plaintiff was not wanted at the KCVA.

23. At the time the supervisor told Plaintiff he was not wanted there, Plaintiff was speaking to a black colleague. The supervisor pointed to the certificate on the wall and told Plaintiff that it was a symbol of the "cross burning mentality."

24. Plaintiff felt physically threatened by these words. He began having panic attacks thereafter and seeing a therapist.

25. The panic attacks came on because of the near daily degrading behaviors directed at Plaintiff.

26. Since 2013, Plaintiff has heard racist slurs including phrases like "boy," "ignorant," "you people," "ghetto," "nappy headed," "those people" and others.

27. Plaintiff's supervisors also told him blacks are lazy; don't let black people bring you their work to do for them, you give it back to them; we don't speak the same language; I don't get it why black women have to have all this hair looking nice and black men have to pay for it; and when complaints were made, they would respond that some people are just sensitive.

28. One of the supervisors who said these things taught the EEO/Discrimination training for his group.

29. On one occasion, Plaintiff went to ask a coworker a work-related question but the two white staffers verbally attacked him, then made him sit and wait while they continued talking about their weekends and families. Making plaintiff wait was one manner in which his colleagues attempted to denigrate him.

4

30. On another occasion, Plaintiff was required to attend a meeting with his supervisor and another accounting tech, a white staffer. The white staffer pushed Plaintiff out of the office and told him he wasn't needed, to get the hell out and slammed the door.

31. At one staff meeting, Plaintiff's supervisor made degrading statements toward Plaintiff in front of others, criticized his work, yelled and made faces at him. At that time, Plaintiff was walking with a walker. The supervisor looked at him and asked why they can't get some able-bodied people in to do this work.

32. His supervisors made it clear that he was not welcome in the fiscal division. A white supervisor repeatedly asked him if he wanted to transfer to another VA location, even though he always assured her he'd rather stay at the KCVA.

33. A white supervisor and another staffer made an issue of Plaintiff's wife residing in another city. They asked repeatedly when she was going to move asking how that works for him; it must be a black thing. She also told him he should take his family photos down, although everyone else had photos up.

34. On multiple occasions, Plaintiff was asked if he was going to Atlanta or New York. He was told it would be good to go back to where he came from.

35. White supervisors conducted out of town job searches for Plaintiff against his wishes.

36. Several white coworkers told Plaintiff repeatedly that his degrees were not real, were not earned, or were not helpful to him in the Fiscal Department.

37. In addition to the racial epithets directed specifically at Plaintiff, he also saw or overheard other racist behaviors at the KCVA. For example, one individual rode a motorcycle to work with a confederate flag on the bike, his jacket, and his hat. This occurred frequently.

38. During his investigations into other matters, he was told directly that a black woman's natural hair was inappropriate for the KCVA and looked "ghetto," so she was not allowed to train professionals. One employee who had a temporary supervisory position, called her co-worker a nappy headed bitch. When Mr. Hill approached her as a Union steward, she repeated the slur indicating that the nappy headed bitches "ain't" going to run her off.

39. Despite his qualifications, Plaintiff was repeatedly ignored for promotion potential, passed over for promotions, and required to train new individuals to take higher grade positions over him.

40. Plaintiff was trained and monitored by younger white employees. Some were recent hires and others had not even passed their probation periods.

41. Plaintiff was the only African American male accounting technician in the Fiscal Department. From the start, his two Caucasian supervisors began isolating him from his co-workers and stripping him of his duties. He was required to send every email he generated to his trainers and supervisors, unlike any other employee.

42. Plaintiff was denied training with co-workers, denied comp time, and told to never ask for overtime pay. Plaintiff's co-workers were allowed to attend trainings, receive comp time, and get overtime pay.

43. It appeared that only white employees were routinely promoted in the Fiscal Department. When Plaintiff asked to attend a training that would qualify him for a career ladder position at GS7/11, he was denied the training although other lesser experienced employees were allowed to attend those types of trainings.

44. Plaintiff's supervisors intentionally alienated him from his co-workers and ostracized him.

45. The EEO referred for investigation the following claims:

a. Whether complainant was subjected to a hostile work environment based on race (black), disability, age, sex (male), and reprisal (prior EEO activity) as evidenced by the following events:

1. On January 9, 2019, Marjie Miller, Supervisor, denied his telework agreement based on his performance appraisal rating.

2. From May 2018 to March 2019, he did not receive enough reinforced training; had recently hired coworkers train him in the job he was doing; in November 2018, his supervisor made degrading statements towards [sic] black men; between October and December 2018, during staff meetings, his supervisor was critical of his work, would send him back for additional information, kept track of him, yelled and made faces at him; his supervisor made a bias statement regarding his disability; in December 2018 he was denied comp time; on or about January 15, 2019, his supervisor restricted his interactions with a female; and his supervisor continuously stripped away his duties and had younger coworkers train him and review his work.

3. On December 5, 2018, he was issued an unacceptable performance rating for the 2017/2018 rating period.

4. On January 29, 2019 he was issued a performance counseling.

5. On March 4, 2019, his supervisor removed Complainant's duties as an Alternate Agency Cashier.

    b. Whether complainant was subjected to a hostile work environment based on Race (black), Disability, Age, Sex (Male) and Reprisal when:

        1. On June 27, 2019, he was constructively discharged from employment with the VA, when he was forced to resign.

        2. On July 7, 2019 and continuing, his access to his Thrift Savings Plan funds was delayed.

        3. On July 17 and 20, 2019, he was issued Letters of Indebtedness.

        4. On May 30, 2019, his Office of Workman's Compensation (OWCP) claims were reduced (reprisal only).

46. In the EEO investigation, Plaintiff explained that he suffers from severe arthritis of the knee, back and neck, severe anxiety disorder with agoraphobia, and depressive disorder. Management was aware of his disability, and he requested leave under the Family and Medical Leave Act as well as Reasonable Accommodation.

47. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

### COUNT 1:  RACE DISCRIMINATION. AGE, DISABILITY AND SEX DISCRIMINATION DISPARATE TREATMENT

48. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–47.

49. Plaintiff is an African American male over the age of 40 with a disability. He is a member of a protected class.

50. He was qualified for the position he held at the KCVA and met his employer's legitimate performance expectations.

51. Plaintiff suffered adverse job actions when management engaged in the actions including but not limited to:

   a. On January 9, 2019, Marjie Miller, Supervisor, denied his telework agreement based on his performance appraisal rating.

   b. From May 2018 to March 2019, he did not receive enough reinforced training;

   c. From May 2018 to March 2019 had recently-hired coworkers train him in the job he was doing;

   d. In December 2018 he was denied comp time;

   e. On or about January 15, 2019, his supervisor restricted his interactions with a female; and his supervisor continuously stripped away his duties and had younger coworkers train him and review his work.

   f. On December 5, 2018, he was issued an unacceptable performance rating for the 2017/2018 rating period.

   g. On January 29, 2019 he was issued a performance counseling.

   h. On March 4, 2019, his supervisor removed Complainant's duties as an Alternate Agency Cashier.

   i. On June 27, 2019, he was constructively discharged form employment with VA, when he was forced to resign.

   j. On July 7, 2019 and continuing, his access to his Thrift Savings Plan funds was delayed.

   k. On July 17 and 20, 2019, he was issued Letters of Indebtedness;

l. Plaintiff endured continuous harassment that altered the terms and conditions of his employment.

52. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than Plaintiff.

53. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

**COUNT 2  HOSTILE ENVIRONMENT BASED ON RACE, COLOR, DISABILITY AND SEX**

54. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–53.

55. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a hostile environment based upon his race, color, sex, and disability in that:

a. Plaintiff was subjected to harassment;

b. The harassment was unwelcome;

c. The harassment was based upon Plaintiff's race;

d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

f. Defendants knew or should have known of the harassment; and

g.  Defendants failed to take prompt, appropriate corrective action to end the harassment.

56. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 3: RETALIATION
## ALL DEFENDANTS

57. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–56.

58. Plaintiff complained to Defendants his concerns that he was being discriminated against directly and through her prior EEO complaints as well as the informal counseling and formal complaints in 2018–2020.

59. Plaintiff reasonably believed that Plaintiff was being harassed and/or discriminated against on the basis of race and sex or age.

60. Defendant engaged in adverse actions against the Plaintiff including but not limited to the following actions:

   a. On January 9, 2019, Marjie Miller, Supervisory, denied his telework agreement based on his performance appraisal rating.

   b. From May 2018 to March 2019, he did not receive enough reinforced training;

   c. From May 2018 to March 2019 had recently hired coworkers train him in the job he was doing;

   d. In December 2018 he was denied comp time;

11

e. On or about January 15, 2019, his supervisor restricted his interactions with a female; and his supervisor continuously stripped away his duties and had younger coworkers train him and review his work.

f. On December 5, 2018, he was issued an unacceptable performance rating for the 2017/2018 rating period.

g. On January 29, 2019 he was issued a performance counseling.

h. On March 4, 2019, his supervisor removed Complainant's duties as an Alternate Agency Cashier.

i. On June 27, 2019, he was constructively discharged form employment with VA, when he was forced to resign.

j. On July 7, 2019 and continuing, his access to his Thrift Savings Plan funds was delayed.

k. On July 17 and 20, 2019, he was issued Letters of Indebtedness.

l. Plaintiff endured continuous harassment that altered the terms and conditions of his employment.

m. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than Plaintiff.

n. Undermining his work so that he could not be successful;

o. Other events as set forth in the Statement of Facts.

61. Plaintiff's complaints of racial, age, disability and sex-based harassment and/or discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff.

62. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue judgment against the Defendants for all the damages that Plaintiff has incurred, including without limitation, physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Plaintiff is entitled;

2. Issue judgment against the Defendants for equitable or injunctive relief including returning Plaintiff to a position commensurate to that from which she was terminated;

3. Award Plaintiff her reasonable attorneys' fees, costs, and expenses;

4. Award to Plaintiff any and all such further relief as may be equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA M. RANDLES  MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

Attorney for Plaintiff